UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| AMBER HOWELL,<br><br>    Plaintiff<br><br>v.<br><br>WASHOE COUNTY,<br><br>    Defendant. | Case No.: 3:24-cv-00280-CSD<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO STRIKE**<br><br>Re: ECF Nos. 11, 18 |

Before the court are Defendant Washoe County's motion to dismiss (ECF No. 11) and Plaintiff Amber Howell's motion to strike the exhibits to the motion to dismiss (ECF No. 18).

After a thorough review, Defendant's motion to dismiss is granted, and Plaintiff's complaint is dismissed with leave to amend as outlined herein, and Plaintiff's motion to strike is denied as moot.

**I. BACKGROUND**

Plaintiff initiated this lawsuit on July 1, 2024. (ECF No. 1.) On September 19, 2024, Plaintiff filed a First Amended Complaint (FAC), which is the operative complaint in this case. (ECF No. 8.) Plaintiff asserts six claims for relief:[1]

    (1) Deprivation of Rights under 42 U.S.C. §§ 1981a, 1988;
    (2) Discrimination Against a Qualified Individual by Covered Entity under 42 U.S.C. §§ 12111 et. seq.;
    (3) Retaliation and Coercion under 42 U.S.C. §12203;
    (4) General Discrimination against Qualified Individual under 42 U.S.C. §12131 et. seq.;
    (5) Discrimination under NRS 613.310; and
    (6) Wrongful Termination in Violation of Public Policy.

---

[1] In her response to the motion to dismiss, Plaintiff withdrew her seventh claim for relief alleging violation of 29 U.S.C. § 215(a)(3). (ECF No. 17 at 20.)

(ECF No. 8.) The final claim is plead in the alternative to Plaintiff's claims under the ADA and Section 504 of the Rehabilitation Act. (*Id.*)

Defendant filed a motion to dismiss Plaintiff's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 11.) Defendant argues Plaintiff did not – and cannot – meet the pleading standard for any of her claims. (*Id.*) Defendant attaches three exhibits to the motion to dismiss, arguing the documents were incorporated by reference into the complaint. (ECF Nos. 11, 11-1, 11-2, 11-3.)

Plaintiff opposes, arguing that her complaint is proper and in the alternative that leave to amend should be granted. (ECF No. 17.) Defendant replied to the motion to dismiss, reiterating the arguments made in the original motion. (ECF No. 21.)

Plaintiff subsequently filed a motion to strike the exhibits to the motion to dismiss under Rule 12(f), arguing they were neither incorporated by reference into the complaint nor properly authenticated. (ECF No. 18.) Defendant responded to the motion to strike, arguing the documents were referred to many times in the complaint and Rule 12(f) is an improper mechanism to strike the exhibits. (ECF No. 22.) Plaintiff replied, arguing that Defendant did not address the authentication issue and that regardless of the mechanism, reliance on the exhibits in evaluating the motion to dismiss would be improper. (ECF No. 23.)

Upon the court's review of the motion to dismiss and exhibits, motion to strike, and subsequent briefing, it became clear the court could evaluate the motion to dismiss without engaging in a lengthy discussion of whether the exhibits could be properly relied upon because of the authentication issue. However, as explained below, the contents of the FAC alone provided a sufficient basis for granting of the motion to dismiss. Thus, in the interest of judicial efficiency, the court denies the motion to strike as moot.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) contemplates the filing of a motion to dismiss for the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). In reviewing the complaint under this standard, the court must accept as true the allegations of the complaint, *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleadings in the light most favorable to plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). This does not apply, however, to "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). "While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." *Id*. at 679.

Under Federal Rule of Civil Procedure 8(a), "a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The Supreme Court has found that at a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Iqbal*, 556 U.S. at 678.

The complaint need not contain detailed factual allegations, but it must contain more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678. It must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of

action." *Id*. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)).

The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "Plausibility" is "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted). Allegations can be deemed "implausible" if there are "obvious alternative explanation[s]" for the facts alleged. *Id*. at 682.

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (dismissed as frivolous); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

### III. DISCUSSION

**A. Disability Discrimination Claims**

The Ninth Circuit has held that there is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act. *Mattioda v. Nelson*, 98 F.4th 1164, 1173 (9th Cir. 2024) (quoting *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999)). Courts have also held that claims under NRS 613.330 follow the same

standard as the ADA. *See Ulloa v. Nevada Gold Mines*, 2024 WL 728696, at *6, n.8 (D. Nev. 2024) (collecting cases).

"The ADA prohibits an employer from discriminating against a qualified individual with a disability 'because of the disability.'" *Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (quoting 42 U.S.C. § 12112(a)). To state a *prima facie* claim of disability discrimination under the ADA, plaintiff must allege facts that plausibly show: "(1) [she] is a disabled person within the meaning of the [ADA]; (2) [she] is a qualified individual with a disability; and (3) [she] suffered an adverse employment action because of [her] disability." *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001).

The court will address Plaintiff's first, second, fourth, and fifth claims jointly, as the analysis is the same for claims arising under the ADA, Rehabilitation Act, and NRS 613.330.

**1. Disability**

With respect to the first prong, the ADA defines a "disabled person" as an individual who has "a physical or mental impairment that substantially limits one or more of the individual's major life activities." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004). "An impairment covered under the ADA includes any physiological disorder," *id.* and "major life activities" includes "standing," "sitting," and "lifting," 29 C.F.R. § 1630.2. "Substantially limited" means that a person is "significantly restricted as to condition, manner or duration under which [she] can perform [the] particular major life activity as compared to ... [an] average person in the general population." *Coons*, 383 F.3d at 885. "Temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." *Wilmarth v. City of Santa Rosa*, 945 F.Supp. 1271, 1276 (N.D. Cal. 1996).

Plaintiff alleges she was diagnosed with "Major Depression, PTSD and Adjustment Disorder." (ECF No. 8 at ¶41.) Defendant argues that Plaintiff's FAC fails to include factual allegations as to how her mental health issues prevented her from performing any major life activities, including performing her job duties. (ECF No. 11 at 7-8.) Plaintiff argues that she "has more than satisfied the *Iqbal* and *Twombly* standard by supplying her complaint with twenty-two pages of factual allegations from which a 'reasonable inference' of Defendant's liability could be made." (ECF No. 17 at 6.) Plaintiff argues she need not establish in the pleading stage the ways in which she is a qualified individual with a disability because "a reasonable person can draw such an inference based on the facts alleged in the complaint, including a medical diagnosis from multiple Nevada licensed physicians." (*Id.* at 8.)

Although Plaintiff may have been brief in her discussion of her mental health, the court finds Plaintiff sufficiently alleged a disability under the ADA. First, it is reasonable to assume that one does not "check[] herself into Reno Behavioral Health as a result of [her] mental health condition and mental state" when she is able to perform all of her "major life activities." (ECF No. 8 at ¶ 35.) Further, it is very logical to assume from the allegation that the County Therapist recommended Plaintiff obtain medical retirement because she was having difficulty in performing the major life activity of working. Thus, construing the pleadings in the light most favorable to Plaintiff and resolving all doubts in the plaintiff's favor, the court finds that Plaintiff has sufficiently alleged she has a disability under the ADA. *Jenkins*, 395 U.S. at 421.

**2. Qualified Individual and Reasonable Accommodations**

Having now determined that Plaintiff has alleged a disability under the ADA, the court must next analyze whether Plaintiff is a qualified individual under the ADA. *Hutton*, 273 F.3d at 891. A "qualified individual" is "an individual with a disability who, with or without reasonable

6

accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A qualified individual also "satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds[.]" 29 C.F.R. § 1630.2(m). Federal regulations define essential functions as those "fundamental job duties of the employment position the individual with a disability holds[.]" 29 C.F.R. § 1630.2(n)(1). "The plaintiff bears the burden of proving that he is qualified." *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 892 (9th Cir. 2001).

When determining whether an individual is qualified for purposes of the ADA, courts engage in a two-step inquiry. *Bates v. United Parcel Serv.*, 511 F.3d 974, 990 (9th Cir. 2007). "The court first examines whether the individual satisfies the 'requisite skill, experience, education and other job-related requirements' of the position. The court then considers whether the individual 'can perform the essential functions of such position' with or without a reasonable accommodation." *Id.* (citations omitted).

In the FAC, Plaintiff alleges the County Therapist "recommended that Plaintiff obtain medical retirement and receive intensive Eye Movement Desensitization and Reprocessing ('EMDR') therapy." (ECF No. 8 at ¶44.) Plaintiff further alleges the County Therapist "recommended to the Defendant that the Defendant should offer Plaintiff medical retirement and pay for EMDR therapy." (*Id.* at ¶46.) However, in response to Defendant's motion, Plaintiff argues this does not qualify as a request for accommodations and points to a later allegation in the complaint that "after being placed on notice of Plaintiff's disability, [Defendants] failed to engage in the interactive process and failed to provide Plaintiff with reasonable accommodations." (*Id.* at ¶71.)

Defendant argues that by alleging she needed "medical retirement" based on her mental

health diagnoses, Plaintiff "tacitly concedes that she cannot perform her essential functions even with an accommodation." (ECF No. 11 at 8.) Defendant argues this shows she fails to allege she is "qualified" under the ADA claim for discrimination. (*Id.*) In reply, Defendant argues that because Plaintiff asserts in her reply that she did not assert reasonable accommodations and therefore does not assert a claim relating to accommodations. (ECF No. 21 at 6.) "[T]here exists no stand-alone claim for failing to engage in the interactive process. Rather, discrimination results from denying an available and reasonable accommodation." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). As the FAC does discuss two potential accommodations, even if Plaintiff confusingly did not intend for them to be treated as such, the court will discuss the accommodations of medical retirement and EMDR treatment in turn to attempt to "resolve all doubts in the plaintiff's favor." *Jenkins*, 395 U.S. at 412.

Temporary medical leave may be a reasonable accommodation under the ADA. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1135-36 (9th Cir. 2001) ("where a leave of absence would reasonably accommodate an employee's disability and permit [her], upon [her] return, to perform the essential functions of the job, that employee is otherwise qualified under the ADA"); *Nunes v. Wal–Mart Stores, Inc.,* 164 F.3d 1243, 1247 (9th Cir.1999). However, this is predicated on an ability to return to work. *Id.* "Retirement" is defined as "termination of one's own employment or career, esp. upon reaching a certain age or for health reasons; the action or fact of stopping work at a job, usu. upon reaching the normal age for leaving employment." *Retirement*, Black's Law Dictionary (12th ed. 2024). Here, where a medical *retirement* is recommended, it is reasonable to assume that no return to work would occur. As the Supreme Court has noted, "[t]he [Americans with Disabilities] Act addresses substantial limitations on major life activities, not utter inabilities." *Bragdon v. Abbott,* 524 U.S. 624, 641 (1998). Thus,

Plaintiff cannot show that she is a qualified individual able to perform essential job functions with a reasonable accommodation under a theory that Defendant denied her request for medical retirement.

The court will now address the allegation that Defendant should have offered to pay for Plaintiff's EMDR therapy as an accommodation. (ECF No. 8 at ¶46.) The ADA defines "reasonable accommodation" as including "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). Regulations promulgated by the EEOC under the ADA further define accommodations as:

> (i) Modifications or adjustments to the job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or
>
> (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position; or
>
> (iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

29 C.F.R. § 1630.2(o)(1). The regulations further explain that reasonable accommodations may include, but are not limited to:

> (i) Making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (ii) Job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the

9

>provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities.

29 C.F.R. § 1630.2(o)(2). The EEOC further explained in an implementation guideline that:

>[I]f an adjustment or modification is job-related, e.g., specifically assists the individual in performing the duties of a particular job, it will be considered a type of reasonable accommodation. On the other hand, if an adjustment or modification assists the individual throughout his or her daily activities, on and off the job, it will be considered a personal item that the employer is not required to provide. Accordingly, an employer would generally not be required to provide an employee with a disability with a prosthetic limb, wheelchair, or eyeglasses.

29 C.F.R. Pt. 1630, App. § 1630.9 (citations omitted)

Thus, review of the statutory text and promulgated regulations shows the obligation to provide reasonable accommodations extends to *job-related* adjustments or modifications. *See Desmond v. Yale-New Haven Hosp., Inc.*, 738 F.Supp. 2d 331, 350 (D.Conn. 2010) ("Nothing in the text of the ADA or in the regulations promulgated thereunder contemplate that an employer should be required to provide a disabled employee with medical treatment in order to restore her ability to perform essential job functions."); *see also* U.S. Equal Opportunity Employment Commission, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans With Disabilities Act* at 24, question number 36 ("[A]n employer has no responsibility to monitor an employee's medical treatment or ensure that s/he is receiving appropriate treatment because such treatment does not involve modifying workplace barriers.") Therefore, as a matter of law, Plaintiff cannot proceed on a claim that Defendant failed to provide reasonable accommodation by failing to pay for her EMDR therapy.

Plaintiff has thus failed to state a claim arising from the denial of an available and reasonable accommodation. *Snapp*, 889 F.3d at 1095. She has also failed to allege that she can perform all essential functions of the job.

Consequently, the court finds that Plaintiff has not adequately pled that she is a qualified individual under the ADA by failing to allege she can perform all essential functions of the job with or without a reasonable accommodation. 42 U.S.C. § 12111(8). Thus, as to Plaintiff's first, second, fourth, and fifth claims, Defendant's motion to dismiss is granted and the claims are dismissed with leave to amend as Plaintiff could plausibly allege facts to clarify that she was a qualified individual under the ADA. *Cato*, 70 F.3d at 1106.

### 3. Adverse Action

Although the motion to dismiss could be granted on Plaintiff's first, second, fourth, and fifth claims based on the failure to show that she is a qualified individual, the motion could be independently granted for failure to satisfy the adverse action element. Here, Plaintiff must show "[she] suffered an adverse employment action because of [her] disability." *Hutton*, 273 F.3d at 891. To succeed on an ADA discrimination claim, a plaintiff must show that her disability was the but-for cause of her termination. *Murray v. Mayo Clinic*, 934 F.3d 1101, 1107 (9th Cir. 2019) (holding that "ADA discrimination claims ... must be evaluated under a but-for causation standard"). The ADA does not require that discrimination be the employer's only motive and, instead, "outlaws adverse employment decisions motivated, *even in part*, by animus based on a plaintiff's disability or request for an accommodation[.]" *Dark v. Curry Cnty.*, 451 F.3d 1078, 1085 (9th Cir. 2006) (emphasis in original) (citation omitted). Still, to satisfy the but-for causation standard, Plaintiff must prove that her termination "would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Defendant argues that Plaintiff failed to show that her disability was the "but for" cause of the alleged adverse employment actions because she chose not to challenge the County

Manager's recommendation for termination because her entire file, including the investigative report, substance use evaluation, and her mental health diagnosis would be made available to the public under open meeting laws. (ECF No. 11 at 10.) Defendant further argues that Plaintiff chose to resign her position rather than challenge the Manager's recommendation, and thus is not entitled to a constructive discharge claim.[2] (*Id.*)

Plaintiff points to the following portions of her complaint to show that she has alleged plausible facts to show her disability was the "but for" cause of the alleged adverse actions:

- Defendant, after being placed on notice of Plaintiff's disability, took adverse action against Plaintiff when Defendant placed Plaintiff on leave without pay *because of Plaintiff's disability*. Specifically, after Defendant, through its agents and/or employees, learned of Plaintiff's disability and the recommendation to offer Plaintiff medical retirement and pay for Plaintiff's EMDR therapy, Defendant placed Plaintiff on leave without pay, recommended termination, and later constructively discharged Plaintiff. ECF No. 8 at ¶ 72.

- Defendant violated 42 U.S.C. §§ 12112 when it discriminated against Plaintiff *because of her disability*. Specifically, Defendant violated 42 U.S.C. §§ 12112 when it denied Plaintiff continued *benefits because of Plaintiff's known disability*. ECF No. 8 at ¶ 82.

- Defendant discriminated against Plaintiff *because Plaintiff opposed Defendant's unlawful actions*. Specifically, on May 1, 2023, Plaintiff hired an attorney to assist Plaintiff with enforcing Plaintiff's rights and privileges under the color of the law. ECF No. 8 at ¶ 88.

- Defendant subjected Plaintiff to discrimination when *after learning of* Plaintiff's disability, Defendant constructively discharged Plaintiff. ECF No. 8 at ¶ 102.

(ECF No. 17 at 8-9 (emphasis original).)

In almost every instance, however, Plaintiff points to statements containing conclusory allegations without supporting facts. Although the court must accept as true the allegations of the

---

[2] Defendant argues that by failing to oppose the arguments relating to constructive discharge, Plaintiff consented to the granting of their motion on that issue. (ECF No. 21 at 5.) However, as Plaintiff must show "but-for" causation regardless of the adverse action alleged, the court will focus on that element as it is dispositive of more than the constructive discharge allegations.

complaint, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, this does not apply do legal conclusions. *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." *Id*. at 679.

The one example where Plaintiff did provide factual basis is the first example, where Plaintiff alleges that after Defendants learned of her disability and the recommendation for medical retirement and EMDR therapy, Defendants commenced adverse actions. (ECF No. 8 at ¶ 72.) However, as discussed above, the fact that medical retirement was recommended, if taken as true, means that Plaintiff cannot support a claim under the ADA because it logically follows that she cannot perform essential functions of the employment position. Thus, if Plaintiff relies on this as a basis for showing "but-for" causation, she correspondingly fails to show she is a qualified individual.

Consequently, Plaintiff does not allege facts sufficient to support this claim under the ADA. However, as the claim is denied on the basis that Plaintiff provided only conclusory allegations, Plaintiff could amend her complaint to include more facts to support those conclusions. Thus, Plaintiff's ADA discrimination claims are dismissed with leave to amend for failure to provide adequate facts to show she would not have faced adverse actions but-for her disability. *Cato*, 70 F.3d at 1106.

**4. Medical Examination**

Finally, the court will turn to Plaintiff's allegation in her second claim that Defendant violated the ADA by requiring her to undergo a medical examination that was not job related. (ECF No. 8 at ¶ 80.) The ADA provides that "[a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an

individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C.A. § 12112(d)(4). However, under 42 U.S.C.A. § 12114(d)(1), "a test to determine the illegal use of drugs shall not be considered a medical examination."

In the FAC, Plaintiff does not make mention of any medical examinations other than the drug and alcohol test and "substance abuse evaluation." (*See* ECF No. 8.) To the extent Plaintiff argues in her response that the substance abuse evaluation was "a *de facto* 'medical exam'" rather than a drug test or job-related inquiry, the court cannot accept this explanation where there are no corresponding allegations in the FAC. (ECF No. 17 at 16.)

Even if those allegations were included, the ADA specifically states that individuals who are "currently engaging in the illegal use of drugs" are not protected under the statute. *See* § 12114(a). "Courts have recognized a distinction between termination of employment because of misconduct and termination of employment because of a disability." *Collings v. Longview Fibre Co.*, 63 F.3d 828, 832 (9th Cir. 1995).

The fact that an individual has a disability relating to drug or alcohol use does not shield the individual from discipline that any other employee would face. *Id.* ("alcoholics and drug addicts are not exempt from reasonable rules of conduct, such as prohibitions against the possession or use of alcohol or drugs in the workplace[], and employers must be allowed to terminate their employees on account of misconduct, "irrespective of whether the employee is handicapped.") (citing *Little v. FBI,* 1 F.3d 255, 259 (4th Cir.1993)); *see also Flynn v. Raytheon Co.,* 868 F.Supp. 383, 387 (D.Mass.1994) ("While the ADA ... protects an individual's status as an alcoholic, it is clear that a company need not tolerate misconduct such as intoxication on the job."); *Wilber v. Brady,* 780 F.Supp. 837, 840 (D.D.C.1992) ("The Rehabilitation Act is designed

to put individuals with disabilities on equal footing with non-disabled people in regards to [employment] decisions. ... It is not designed to insulate them from disciplinary actions which would be taken against any employee regardless of his status.").

Thus, the court grants Defendant's motion to dismiss as to Plaintiff's second claim that Defendants violated the ADA by requiring her to undergo a medical exam. However, as Plaintiff could allege more facts to provide a basis that the examination should be properly characterized as a medical exam, the court will dismiss the claim with leave to amend. *Cato*, 70 F.3d at 1106.

**B. Retaliation and Coercion**

The court will now turn to Plaintiff's third claim for Retaliation and Coercion under the ADA. In the claim, Plaintiff seeks compensatory damages based on "severe emotional, psychological, vocational, and financial damages." (ECF No. 8 at ¶ 91.) However, the Ninth Circuit held that punitive and compensatory damages are not available for ADA retaliation claims. *Alvarado v. Cajun Operating Co.,* 588 F.3d 1261, 1269 (9th Cir. 2009). Retaliation claims are limited to equitable relief as outlined in 42 U.S.C. § 2000e–5(g)(1). Thus, the ADA retaliation claim is dismissed with prejudice to the extent Plaintiff seeks compensatory or punitive damages, as amendment would be futile. *Cato*, 70 F.3d at 1106. However, in the prayer for relief portion of the complaint, Plaintiff seeks "appropriate equitable relief against Defendant as allowed by law." (ECF No. 8 at 21.) Thus, to resolve any doubts in favor of the Plaintiff, the court assumes this portion of the prayer for relief encompasses the third claim and thus the part of the claim seeking equitable relief will be evaluated. *Jenkins*, 395 U.S. at 421.

Turning now to the allegations in the complaint, Plaintiff alleges she was retaliated against because she hired an attorney on May 1, 2023, to assist her with asserting her rights and privileges under the ADA. (ECF No. 8 at ¶ 88.) Plaintiff alleges that in retaliation for doing so,

15

Defendant placed her on leave without pay and then informed her that "based on upon the findings of the County's investigation," the County Manager would be recommending her termination to the Board of County Commissioners. (*Id.* at ¶ 89.)

Defendant argues that Plaintiff failed to properly allege that her conduct was the but-for cause of the alleged retaliation. (ECF No. 11 at 19-20.) In order to support a claim for retaliation under the ADA, the Plaintiff must show that her protected conduct was the but-for cause of an adverse action. *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015). In this case, because Plaintiff alleges she was told her termination would be recommended because of the findings of the County's investigation, she does not adequately allege that her hiring of counsel was the but-for cause of her recommended termination. In fact, Plaintiff's allegations seem to allege that the County's investigation was the but-for cause.

Further, other than to state that she was placed on administrative leave and would be recommended for termination "shortly after" she hired counsel, Plaintiff does not support this conclusion with any facts. Although proximity in time between the alleged protected conduct and retaliatory action can support a claim for retaliation, here the alleged retaliation occurred either 44 or 73 days after the protective conduct and does not support a causal link in this case. *See Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000) (quoting *Yartzoff v. Thomas,* 809 F.2d 1371 (9th Cir.1987) ("That an employer's actions were caused by an employee's engagement in protected activities may be inferred from 'proximity in time between the protected action and the allegedly retaliatory employment decision.'").

Because Plaintiff fails to sufficiently allege that her protective conduct was the but-for cause of the alleged adverse employment actions, Defendant's motion to dismiss is granted.

However, Plaintiff could allege facts sufficient to support the retaliation claim, and thus the claim is dismissed with leave to amend. *Cato*, 70 F.3d at 1106.

**D. Wrongful Termination in Violation of Public Policy**

In the FAC, Plaintiff alleges a claim for "Wrongful Termination in Violation of Public Policy" and cites unspecified Housing and Urban Development (HUD) policy and NRS 281.631. (ECF No. 8 at ¶¶ 112-144.) However, in her opposition to the motion to dismiss, Plaintiff argues she is not bringing a claim under NRS 281.631 but rather a common law claim for wrongful termination in violation of public policy. (ECF No. 17 at 18.)

State, not federal, law creates the cause of action for wrongful discharge in violation of public policy. *Rains v. Criterion Systems, Inc.*, 80 F.3d 339, 343 (9th Cir. 1996). In support of her claim, Plaintiff cites to the standard for wrongful termination in violation of public policy under *California* law. However, as the underlying allegations occurred in Nevada, Nevada state law applies.

In *Chavez v. Sievers*, the Nevada Supreme Court refused to recognize a common law tortious discharge cause of action when an employer discriminated against an employee in violation of Nevada public policy. 43 P.3d 1022, 1025-26 (Nev.2002) (holding "we are constrained by the legislature's decision to address the issue through legislation and to provide statutory remedies for only certain employees."). Thus, Plaintiff may not maintain a claim for wrongful termination in violation of public policy under Nevada common law. *U.S.E.E.O.C. v. Champion Chevrolet*, No. 3:07-CV-444-ECR-VPC, 2008 WL 4167508, at *2 (D. Nev. Sept. 2, 2008). Consequently, Defendant's motion to dismiss Plaintiff's claim for wrongful termination in violation of public policy is granted. Plaintiff's claim is dismissed without leave to amend

because cannot allege any facts to support a claim, as it does not exist under Nevada common law. *Cato*, 70 F.3d at 1106.

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's motion to dismiss Plaintiff's FAC (ECF No. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's FAC (ECF No. 8) is **DISMISSED** in its entirety. Plaintiff is granted leave to file a Second Amended Complaint (SAC) on her first, second, third, fourth, and fifth claims as explained herein. Should Plaintiff choose to file a SAC, the deadline is **April 23, 2025**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to strike exhibits to Defendant's motion to dismiss (ECF No. 18) is **DENIED** as moot.

**IT IS SO ORDERED.**

Dated: March 24, 2025

_____
Craig S. Denney
United States Magistrate Judge