BRANDON PRICE
Deputy District Attorney
Nevada Bar Number 11686
One S. Sierra Street
Reno, NV  89501
brprice@da.washoecounty.gov
(775) 337-5700
ATTORNEYS FOR DEFENDANT WASHOE COUNTY

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

AMBER HOWELL,

        Plaintiff,

vs.

WASHOE COUNTY,
A political subdivision of the State of Nevada,
and DOES I-XX,

        Defendants.           /

Case No.  3:24-cv-00280-CSD

**REPLY IN SUPPORT OF WASHOE COUNTY'S MOTION FOR SUMMARY JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

This case revolves around Amber Howell's ("Howell") egregious workplace misconduct. Howell resigned from employment with the County after an independent investigator found she engaged in gross misconduct. The events have nothing to do with Howell's alleged disabilities or her retention of counsel. There is no evidence supporting her assertion that the County's actions occurred *because of* Howell's alleged disabilities or her retaining legal counsel. Howell cannot wash away the sins of her misconduct by simply claiming she had a disability *after* the County placed her on leave and initiated steps to address misconduct. Even if Howell was disabled under the ADA, the ADA does not give her a license to commit workplace misconduct without impunity.

The County demonstrated there are no genuine disputes of any material fact and it is entitled to summary judgment on all claims. In certain instances, the County also pointed out the absence of evidence to support Howell's claims. The undisputed facts show the County's actions

were carried out for legitimate non-discriminatory reasons. Because the County met its initial burden for summary judgment, the burden shifted to Howell to rebut the County and demonstrate, through evidence, the existence of a genuine issue of material fact. Howell opposes the County's Motion but fails to present evidence of a genuine factual dispute to avoid summary judgment. ECF No. 129. Instead, Howell relies on conjecture, unsupported statements, and meritless arguments. The County is entitled to summary judgment in its favor on all of Howell's claims.

## II. HOWELL MISAPPREHENDS THE APPLICABLE STANDARD

Howell fundamentally misunderstands the summary judgment standard, the burden of persuasion, and the nature of a genuine dispute of material fact. She contends that factual issues exist in this case "because the County has not demonstrated any instance where the Plaintiff has conceded or adopted its testimony nor has it provided additional documentary evidence." ECF No. 129 at 2. Howell erroneously argues that facts are not undisputed unless corroborated by her own testimony, stipulations, or "objective" evidence. *Id.* This is not the correct standard for showing the existence of a genuine issue of material fact to avoid summary judgment.

Where the nonmoving party bears the ultimate burden of proof at trial, the moving party's burden is satisfied by pointing out an absence of evidence supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After meeting this initial burden, the non-moving party must come forth with specific facts showing that a genuine issue of material fact exists to avoid summary judgment. FRCP 56(e); *Hughes v. United States*, 953 F.2d 531, 541-42 (9th Cir. 1992). A genuine issue of material fact must be disputed by evidence, and not something a party simply approves of or agrees with. Inferences in the nonmoving party's favor "are not drawn out of thin air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn." *United States v. Honeywell Int'l, Inc.*, 542 F. Supp. 2d 1188, 1197 (E.D. Cal. 2008) (cit. omitted). Plaintiff may not rest on the pleadings, conclusory arguments, conclusory testimony, or speculative testimony after a defendant demonstrated there is no dispute to a material fact. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730 738 (9th Cir. 1979); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Gunzenhauser v. Garland*,

No. 3:22-CV-03406-WHO, 2024 WL 1120385, at *2 (N.D. Cal. Mar. 14, 2024). When a party fails to properly support an assertion, "the court may consider the fact undisputed…" FRCP 56(e)(2). Undisputed facts are taken as true for purposes of summary judgment. *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 745 (9th Cir. 2010).

Here, the County satisfied its initial burden by presenting deposition transcripts, declarations, documentary evidence, video evidence, still shots of video, and text messages. ECF No. 105. The County also pointed out the absence of evidence for elements essential to Howell's claims. *Id.* The Motion's declaration exhibits contain sworn witness testimony regarding facts material to this case. ECF Nos. 105-5, 105-11, 105-12, 105-15, 105-19, 105-27. That testimony is not contradicted by any other evidence in the record. This evidence is no different or any less reliable than deposition testimony. Though Howell does not like the testimony because it is problematic to her case, this does not create a disputed fact. Because the declarations contain detailed facts and not conclusory statements, they are properly considered on the Motion.

Howell attempts to discount the County's evidence and argues facts are disputed because they are based on "self-serving" testimony from individuals with a personal interest in the County's success. ECF No. 129 at 2.[1] The Ninth Circuit has rejected similar arguments. In *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497–98 (9th Cir. 2015), the court acknowledged declarations are often self-serving, and properly so because the party is submitting them to support their position. "The district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature." *Id.* at 497. Self-serving affidavits do not always create a genuine issue of material fact. *Id.; see also S.E.C. v. Phan,* 500 F.3d 895, 909 (9th Cir.2007). When a declaration states only conclusions and inadmissible facts, the court may

---

[1] Two sworn declarations in the Motion are from individuals not currently employed at the County. ECF Nos. 105-15, 105-19. Declarant Eric Brown is not a defendant, no longer employed by the County, and therefore has no personal interest in the outcome of this case. *See* ECF No. 105-15. Declarant Sandra Ketner, the neutral and impartial investigator who investigated Howell's misconduct, likewise has no personal interest in this case. ECF No. 105-19 at ¶¶4-5, 11.

disregard it. *Id.; F.T.C. v. Publ'g Clearing House, Inc.,* 104 F.3d 1168, 1171 (9th Cir.1997). Self-serving statements can also be disregarded when contradicted by prior testimony or evidence. *See Andreini & Co. v. Lindner*, 931 F.2d 896 (9th Cir. 1991); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Howell did not satisfy her burden to avoid summary judgment because she does not present evidence demonstrating the existence of a genuine issue of material fact for trial and her Opposition is based on conjecture, conclusory allegations, and baseless arguments. FRCP 56; *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1995).

## III.  LEGAL ARGUMENT

### A.  Howell's Evidentiary Objection is Baseless and Should be Overruled

Howell objects to Exhibit 9 to the Motion, which is video footage of the April 5, 2023 Senior Advisory Board meeting showing Howell appeared intoxicated on the job. ECF Nos. 129 at 1; 105-9. Howell's objection is based on her mistaken belief that the County did not disclose the video during discovery.  ECF No. 121 at 1. The Court should overrule the objection because the video was in fact disclosed well before the November 26, 2025 discovery cut-off. The County disclosed the video (WC2923) in its First Supplemental Disclosures on January 27, 2025. Ex. 1, First Supplemental Disclosures at p. 4.[2]  It is unclear why Howell now claims it was not disclosed.

### B.  Howell Does Not Show an ADA-Covered Disability

An essential element of an ADA discrimination claim is the existence of a disability under the ADA. *Larson v. United Nat. Foods W. Inc.*, 518 F. App'x 589, 591 (9th Cir. 2013). Howell's discrimination claims are based on the following impairments: (1) Major Depressive Disorder, (2) Post-Traumatic Stress Disorder, and (3) generalized Anxiety Disorder. ECF No. 129 at 5. A disability under the ADA is a physical or mental impairment that substantially limits the performance of a major life activity as compared to most people in the general population. 42 U.S.C. § 12102(1)(A); 29 C.F.R. § 1630.2(j)(1)(ii). "[S]ubstantially limiting" is not meant to be

---

[2] Even if it was not disclosed, the Court can take judicial notice and consider the video as it depicts a public meeting which is a public record. *Hyatt v. Yee*, 871 F.3d 1067, 1071 n. 15 (9th Cir. 2017).

a demanding standard and is construed broadly. 29 C.F.R. § 1630.2(j)(1)(i). However, not every impairment is a disability under the ADA. 29 C.F.R. § 1630.2(j)(1)(ii). The County is entitled to summary judgment on Howell's discrimination claims (first, fourth, and fifth) because the record lacks sufficient evidence to create an issue of fact on whether Howell has an ADA-covered disability. ECF Nos. 105 at 16-18; 117 at 13-22. Howell falls short of showing her mental impairments substantially limited one or more of her major life activities because she adduces no evidence that her impairments substantially limited her ability to perform a major life activity as compared to most people in the general population.

Howell relies on the Division Directors' observations of her misconduct to invent a factual issue on whether her impairments were substantially limiting. ECF No. 129 at 7-9, 14. She argues her erratic behavior and difficulty communicating, focusing, speaking, and concentrating were merely conduct resulting from her disability. *Id.* at 9, 14. Howell's reliance on the observations to show her impairments were substantially limiting is misplaced for several reasons.

First, arguments related to what Division Directors' perceived about Howell's behavior lend nothing to Howell's ADA claims because they go to a question of whether Howell was regarded as having disability. Howell did not assert a "regarded as" disabled theory in her Complaint. ECF No. 40 at ¶¶ 65-143. She alleged only an "actual" disability. *Id.*

Second, there is no evidence supporting Howell's conclusory argument that her misconduct was related to or caused by mental impairments. Howell tries to rationalize her behavior by claiming it was manifestations of her disabilities but cites no evidence to support this bare assertion. In arguing her conduct was a symptom of disabilities Howell only discusses the incident where she appeared intoxicated at a meeting and completely ignores all other misconduct that had nothing to do with her apparent intoxication. When the Division Directors reported Howell's behavior they did not believe she exhibited symptoms of a medical condition. Instead they believed Howell was under the influence of drugs or alcohol while performing her job duties, which violates County policy. ECF Nos. 117-6 at 5-6, 7-12, 13-15; 117-6 at 5-8; 117-17 at 7-9; 117-15 at 7-9; 117-23 at 2, ¶ 3. Because being under the influence is a violation of County policy

(ECF Nos. 117-1 at 23; 117-7; 117-8 at 2, ¶¶ 2-3), the ADA does not protect Howell from alcohol-related misconduct. *See Daft v. Sierra Pac. Power Co.*, 251 F. App'x 480, 482 (9th Cir. 2007).

Third, Howell's medical records are insufficient to show her impairments were substantially limiting. As for the life activity of sleeping, Howell's medical records contain minimal notations of some sleep issues for 20 days during her employment *after* she was placed on leave for gross misconduct. EFC Nos. 107-19 at HOWELL_1031, 1039; 107-20 at HOWELL00272. With respect to the life activity of thinking, Howell points to a single June 29, 2023 record having one notation that Howell's thought process was "irrational" and blocked." ECF Nos. 107 at 21; 107-19 at HOWELL_1034. More importantly, there is no evidence in the medical records showing Howell's symptoms were severe or frequent enough to substantially limit a major life activity as compared to the general public. Howell's inability to establish she is disabled warrants summary judgment in favor of the County on the ADA Discrimination claims.

### C. Howell Failed to Present Evidence of Causal Connection

The County is entitled to summary judgment on Howell's discrimination and retaliation claims (first, third, fourth, and fifth) because Howell cannot show a causal connection between her alleged disabilities/protected activity and the County's actions. As set forth below, Howell fails to demonstrate the County's actions would not have occurred but for her alleged disabilities and/or her protected activity. *See Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019) ("ADA discrimination claims under Title I must be evaluated under a but-for causation standard"); *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 472–73 (9th Cir. 2015) (applying the but-for causation standard at summary judgment in an ADA retaliation case).

#### 1. The County Had No Knowledge of Howell's Disabilities

To establish causation, Howell must show the decision-maker had knowledge of the disability prior to the employment action at issue. *See Romero v. Cnty. of Santa Clara,* 666 F. App'x 609, 611 (9th Cir. 2016). There is no evidence in the record that County officials had knowledge Howell suffered from a disability at any point during her employment, and indeed, the County decision-makers had no such knowledge. ECF Nos. 105-12 at 5, ¶14; 105-15 at 7, ¶16.

The Motion shows that Howell never informed the County decision-makers of her diagnoses or her treatment for her conditions. *Id.*; ECF Nos. 105-1 at 18-25; 105-3 at 15-16; 105-4 at 29-30. Additionally, Howell never requested an ADA accommodation. ECF Nos. 105-3 at 16; 105-4 at 30; 105-12 at 5-6, ¶14; 105-15 at 8, ¶20. Howell did not seek an accommodation because she did not need one. ECF No. 105-1 at 9, 16, 25-26. Howell testified she was able to perform her job duties during her employment. *Id.* Howell did not rebut these facts.

Howell inexplicably continues to rely on Fung's substance evaluation in arguing a factual dispute exists on the County's knowledge of her disabilities. Howell's reliance on the evaluation is untenable because Fung did not diagnose Howell with anything. ECF No. 105-14 at 4-5. Since Fung determined Howell did not have a substance abuse disorder and does not have licensure to diagnose other conditions (ECF No. 105-13 at 14-16, 21), there is no possibility that Fung's evaluation placed County officials on notice that Howell suffered from any disability.

The Division Directors' reports of Howell's misconduct also do not show the County was aware Howell had an ADA covered disability. In addition to other forms of misconduct, the Division Directors reported what they believed to be intoxication in the workplace by Howell. The ADA does not protect employees who commit alcohol-related misconduct. *Daft*, 251 F. App'x 480 at 482. Furthermore, there is no evidence indicating the behavior observed by the Division Directors were symptoms of Howell's mental impairments.

Additionally, there is no evidence the Division Directors were aware of Howell's physical or mental impairments when they reported her misconduct on April 20, 2023. This is reasonable because Howell was diagnosed with her impairments on April 30, 2023 and May 9, 2023, several days after the Division Directors' report. ECF Nos. 105-5 at 3, ¶8; 107-26 at HOWELL_265-69. The timing of Howell's diagnoses undercut her speculative argument that the Division Directors' report amounted to symptoms of mental impairments. Moreover, it would have been impossible for the Division Directors to know of any relation between Howell's conduct and mental impairments because the reports arose from conduct occurring for months prior and Howell had not been diagnosed with the impairments at the time of their report.

The County does not dispute its legal obligation with the interactive process and reasonable accommodations once it becomes aware that (1) an employee has an ADA-covered disability and (2) needs an accommodation to perform the essential functions of their position. However, the County had no information that would have placed it on notice that Howell had a disability and required an accommodation even if Howell was diagnosed and receiving treatment for her mental impairments before she was placed on leave. Howell did not inform County officials of her ongoing treatment for her mental impairments and she never requested an accommodation. Without knowledge that Howell had a disability, the County had no legal obligation to engage in the interactive process or accommodate Howell. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001). Assuming *arguendo* that the County was aware that Howell required an accommodation, it still did not violate the ADA by not granting Howell an indefinite leave of absence. *See Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir.2003) (requesting an indefinite leave of absence is unreasonable as a matter of law).

Because the County had no knowledge of Howell's alleged disabilities, it could not have harbored any discriminatory animus against Howell based on a disability and it was under no obligation to engage in the interactive process or to accommodate her. This being so, Howell cannot establish the County's actions were carried out because of her disabilities.

**2. The County's Acts Arose from Legitimate Non-Discriminatory Reasons**

Howell did not present one iota of evidence showing that the County's actions occurred *because of* her alleged disabilities or the protected activity of hiring an attorney. On the other hand, the County presented proof of legitimate non-discriminatory bases for its actions.

The County placed Howell on paid leave and required her participation in a fitness for duty/substance abuse evaluation to determine whether Howell was capable of performing her job duties solely because of her behavior at the April 5, 2023 Senior Advisory Board meeting where she appeared intoxicated. ECF No. 105-12 at 2-3, ¶¶3-4. County staff expressed concerns about Howell's possible intoxication during the meeting based on their observations of her. *Id.* at 2-3, ¶¶4-5; 105-9; 105-10; 105-12 at 2 ¶2; Howell was unfocused, had slurred and incomplete speech,

hid her head under her sweater, and appeared to be talking to herself. Id. Before the County took any action, it reviewed the video footage and confirmed the reported concerns were valid. ECF No. 105-5 at ¶5. Thomas and HR Director Hurley had legitimate questions about whether Howell was capable of performing her job duties if she was intoxicated on the job. ECF Nos. 105-5 at 3, ¶¶5-6; 105-12 at 3, ¶3. HR Director Hurley told Howell on April 11, 2023 that the purpose of the substance abuse evaluation was to determine if she was fit for duty. ECF No. 105-12 at 3, ¶4; Ex. 2, Audio of April 21, 2023 Evaluation Session at 18:20-18:27.

The lack of the County's knowledge of Howell's disabilities coupled with the timing of the substance abuse evaluation further demonstrates the absence of a causal connection between Howell's alleged disabilities and the County's actions. The County was not aware Howell had a disability when Howell was required to participate in the substance abuse evaluation. ECF Nos. 105-5 at 4, ¶11; 105-12 at 5, ¶14. Also, the County initiated the evaluation on April 11, 2023, and Howell was diagnosed with her impairments after, on April 30, 2023 and May 9, 2023. ECF Nos. 105-12 at 3, ¶4; 107 at 12; 107-26 at HOWELL_265-69. Because the County's evaluation decision occurred weeks before Howell was even diagnosed with her impairments, there is no possible way a causal connection could exist between those two.

Next, the County initiated its independent misconduct investigation in response to the Division Directors' reports of Howell's workplace misconduct. ECF Nos. 105-12 at 4, ¶6; 105-15 at 2-3, ¶5. In late March 2023, HSA Division Director Pamela Mann reported concerns about Howell's conduct. ECF Nos. 105-5 at 2, ¶3; 105-8 at 5-8, 13-19, 21-31. On April 20, 2023, HSA's Division Directors reported additional issues including, but not limited to, Howell's intoxication at work, requests for prescription medications from staff, failure to following HSA objectives and procedures regarding reunification of a child, failure to comply with HSA's fiscal requirements with HSA gift cards, mistreatment of HSA staff, and threatening and bullying behavior in the workplace. ECF Nos. 105-4 at 27-28, 32;105-5 at 3-4, ¶8; 105-8 at 9-12, 20, 26-27, 34-35; 105-16 at 5-6, 9; 105-17 at 6, 10-12, 13-19; No. 105-18 at 6-7, 10-15, 16-17, 18-19.

Howell was required to comply with the County's drug-free workplace and conduct

policies. ECF Nos. 117-1 at 23; 117-7; 117-8 at 2, ¶¶2-3. The purpose of the investigation was to determine if Howell violated those policies. ECF Nos. 105-12 at 4, ¶6; 105-15 at 2-3, ¶¶5-6. Howell presents no evidence indicating the investigation was initiated for any improper purpose. Many of the Division Directors' allegations were substantiated by investigation, which determined Howell committed gross misconduct. ECF Nos. 105-20; 105-21. The investigator's findings and conclusions establish that the Division Directors' reported concerns were legitimate.

The timing of the misconduct investigation further demonstrates the absence of a causal connection between that investigation and Howell's alleged disabilities. The County initiated its investigation on April 26, 2023, before Howell was diagnosed with the impairments alleged.  ECF Nos. 105-12 at 4, ¶6; 105-19 at 2, ¶7. No reasonable juror could conclude the County investigated Howell for misconduct because of her alleged disabilities. *See e.g. Canales-Jacobs v. New York State Off. of Ct. Admin., 640 F. Supp. 2d 482, 500 (S.D.N.Y. 2009)* (finding no causal connection where decision to initiate disciplinary action was made before employer learned of disability).

On June 12, 2023, the investigator issued a preliminary report concluding that Howell engaged in gross misconduct. ECF Nos. 105-19 at 3, ¶10; 105-20. Manager Brown placed her on leave without pay effective June 15, 2023 because of that report. ECF No. 105-15 at 2-3, ¶¶7-8. There is no evidence Howell was placed on leave without pay for any other reason.

On June 20, 2023, the investigator issued her final investigative report, which substantiated several of the allegations of misconduct and concluded that Howell committed serious violations of workplace misconduct by engaging in the following acts: (1) demanding loyalty from staff and threatening consequences for being disloyal; (2) making derogatory comments regarding management; (3) making derogatory comments about employees; (4) improperly transferring two HSA Division Directors; (5) placing her own interests before HSA's objectives and using her position to circumvent policy; (6) disregarding HSA procedures for gift cards and gifts to the public; (7) requesting prescription medications from employees; and (8) requesting expensive gifts in exchange for management decisions  or offering County-paid leave in exchange for employees' activities for Howell's son.  ECF No. 105-21 at 14-18.

On July 13, 2023, Manager Brown informed Howell he was recommending her termination because the investigator found Howell committed serious misconduct. ECF No. 105-15 at 6, ¶14. Howell was informed she could contest those findings and Manager Brown's recommendation to the Board. ECF No. 105-25. Howell decided not contest and instead to resign. ECF Nos. 105-1 at 27-28; 105-15 at 7, ¶17; 105-26. There is no evidence that Manager Brown recommended Howell's termination for any reason other than her substantiated misconduct.

Howell makes a futile attempt to create an issue of disputed fact on whether Manager Brown's actions were non-discriminatory by trying to argue the merits of the investigator's findings that Howell committed misconduct. ECF No. 129 at 14-17. It is too late for Howell to challenge the merits of the underlying misconduct allegations and the investigator's findings. The time and place for Howell to do so was July of 2023 before the Board of County Commissioners. Howell waived her ability to contest the validity of the investigative findings and Manager Brown's recommendation for termination when she decided to forego the appeal process before the Board and resigned instead. Furthermore, even if Howell could somehow show she did not commit misconduct (she cannot) it would not create a factual dispute on the issue of causation. Manager Brown's decisions were based solely on the investigator's findings that Howell committed gross misconduct in violation of County policy. Even if the investigator was somehow incorrect or mistaken in her findings, it does not change the fact that Manager Brown's decisions were carried out for legitimate non-discriminatory reasons and nothing to do with Howell's alleged disabilities or because she hired legal counsel.

As for Howell's retaliation claim, the County presented evidence that its decisions had nothing to do with Howell hiring legal counsel or exercising her rights under the ADA. ECF No. 105-15 at 7-8, ¶¶ 15-16, 21. Howell adduces no evidence to the contrary. Without such evidence, there is no factual dispute as to the County's motivations for its decisions.

**3. Howell Fails to Produce Evidence of Pretext to Avoid Summary Judgment**

To defeat summary judgment, a plaintiff may show pretext "(1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by

showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl v. Nielsen Media Research, Inc*., 658 F.3d 1108, 1112-113 (9th Cir. 2011). "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003) (quot. omitted). "Where evidence of pretext is circumstantial… the plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext." *Id*. at 1113 (cit. omitted). Plaintiff "must tender a genuine issue of material fact as to pretext in order to avoid summary judgment." *Steckl v. Motorola*, Inc., 703 F.2d 392, 393 (9th Cir. 1983). The County is entitled to summary judgment because it has proffered legitimate non-discriminatory reasons for its actions and Howell fails to produce evidence creating a genuine issue of material fact as to whether the County's reasons for its actions were pretext for disability discrimination.

Howell attempts to show pretext through: (1) arguing that her misconduct was symptomatic of her mental impairments; (2) temporal proximity between the date Fung *completed* her evaluation and the date Howell was informed of the misconduct investigation; (3) temporal proximity between the dates Howell passed her drug test/the initial session with Fung and the date the County retained the independent investigator for the misconduct reports; (4) the absence of documented misconduct prior to March of 2023; and (5) timing of the Division Directors' misconduct reports. ECF No. 129 at 9-13. As set forth below, Howell offers no direct evidence of pretext and fails to introduce specific and substantial circumstantial evidence of pretext.

Howell cannot demonstrate pretext by contending her misconduct was a symptom of her disabilities because there is no evidence to support it. Additionally, Howell refers to conduct regarding her suspected intoxication in the workplace but alcoholics are not exempt from rules which prohibit the use of alcohol or drugs at work. *Daft*, 251 F. App'x at 482–83 (the ADA does not protect intoxication on the job). The County had a legitimate good faith basis to question if Howell was intoxicated at work and capable of performing her job. Accordingly, Howell's conduct does not demonstrate the County's proffered reasons for its actions were not believable.

Howell obfuscates the issues when discussing her treatment for Endometriosis and low

back pain to excuse her behavior. She argues that a reasonable jury could conclude the reports of her alleged opiate abuse were misguided because she was prescribed medications for those conditions. ECF No. 129 at 14. This lends nothing to this case. The misconduct investigation revealed that Howell *requested prescription narcotics from subordinate employees*, not that she used her own prescribed medication. ECF No. 105-21 at 17. Manager Brown's recommendation to terminate Howell was based on various legitimate reasons, including the sustained finding that Howell asked employees to give her narcotics in the workplace. ECF No. 1-5-15 at 5-7, ¶¶12-15.

Howell's temporal proximity arguments do not demonstrate pretext for discrimination. "[M]ere temporal proximity is generally insufficient to show pretext." *Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1038 (C.D. Cal. 2014); *Huck v. Kone, Inc.*, 539 Fed. Appx. 754, 755 (9th Cir. 2013) (stating that plaintiff's "only evidence of discrimination was the temporal proximity of his termination to his medical leave, which is insufficient to prove pretext."). The timing between (1) the date Fung's evaluation report was provided to the County and the date Howell was notified of the misconduct investigation, and (2) the date Howell passed her drug test and the date the County initiated its misconduct investigation, are inconsequential. Fung's evaluation (including the drug test results) did not place the County on notice that Howell had a disability because she concluded that Howell did not have a substance abuse disorder and she did not diagnose Howell with any other conditions. This being so, Fung's evaluation cannot be used to infer or show that the County harbored any sort of discriminatory intent when initiating its investigation. Furthermore, the date the misconduct investigation was initiated (not the date Howell was informed of it) is the pertinent date for purposes of causation. The County initiated its investigation on April 26, 2023, which was six days after the Division Directors reported their concerns (April 20, 2023), more than thirty days before Fung's evaluation was provided to the County (May 30, 2023) and four days before Howell was diagnosed with any impairments (April 30, 2023 and May 9, 2023). This being so, the timing of the County's investigation establishes that the misconduct investigation had nothing to do with Howell's disabilities.

The County promptly initiated an investigation to address Howell's misconduct as soon

as the County was made aware of it in March and April of 2023. The fact that Howell did not have a documented disciplinary history prior to March of 2023 is irrelevant. The County was not previously made aware of misconduct by Howell. Had the County received similar reports of misconduct by Howell before March of 2023 and did nothing to address that may have been beneficial to Howell's pretext argument, but that is not what occurred.

Howell tries to attack the legitimacy of the Division Directors' allegations by making the conclusory statement, "[t]he County lambasted Plaintiff with three years' worth of complaints two months after the County or had reason to know of Plaintiff's disability." ECF No. 129 at 13. Howell also suggests the allegations were manufactured by contending that they were solicited by the independent investigator. *Id*. at 11. Howell also argues the Division Directors delayed in reporting Howell's misconduct and characterized the delay as "suspicious." ECF No. 129 at 12. There is no evidence to support Howell's statement the County was aware of Howell's alleged disabilities before the Division Directors made their complaints. Howell has also not presented evidence demonstrating the allegations were manufactured. This is because no such evidence exists. The uncontroverted evidence shows the reported concerns were legitimate. The complaints were not solicited by anyone affiliated with the County. ECF Nos. 105-3 at 16-17; 105-8 at 31. Indeed, the Division Directors reported their concerns before the County ever hired the independent investigator. ECF No. 105-12 at 3-5, ¶¶ 5-7. Ultimately the investigator sustained the misconduct allegations. The only reason the Division Directors did not report their concerns sooner was because they feared retaliation by Howell.  ECF Nos. 105-4 at 34; 105-8 at 32-33; 105-16 at 8, 11; 105-18 at 14-15. Simply characterizing the reports as manufactured without providing any supporting evidence does not make it a fact.

**D.  Howell Voluntarily Resigned and was Not Constructively Discharged**

"To allege a constructive discharge claim, a plaintiff must meet a higher standard than a discrimination claim; the conditions must be 'sufficiently extraordinary and egregious.'" *Burnett v. SYB, LLC*, No. 220CV00029APGBNW, 2021 WL 2744502, at *2 (D. Nev. July 1, 2021) (quot. omitted). There must be "aggravating factors, such as a continuous pattern of discriminatory

-14-

treatment" where working conditions become so intolerable that a reasonable person in that position would have felt compelled to resign. *Sanchez v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir. 1990). Howell's constructive discharge theory fails as a matter of law because she has not presented evidence showing any continuous pattern of discriminatory treatment tied to her disability or continuous retaliation. *McGill v. McDonald*, 237 F. Supp. 3d 1049, 1058 (D. Nev. 2017). In fact, the evidence shows that Howell was not subject to discrimination at all.

Although Howell did not formally resign until July 18, 2023, her own text messages show that decided to resign as early as June 14, 2023.  ECF No. 105-24. Howell's message stated, "I'm Resigning from the county June 30." *Id*. at 2. Without being asked why, she volunteered, "I am leaving by choice [t]he politics are too much and I want to do things I believe in. Done with the bullshit." *Id.* This was *before* Howell was notified of the misconduct investigation outcome and Manager Brown recommended termination. *Id.;* ECF Nos. 105-15 at 6, ¶ 14; 105-25. There is no evidence that the County asked Howell to resign. Howell never informed Manager Brown, County Commissioners, or other staff she felt like she was forced out. Additionally, her resignation letter makes no indication that she had no choice but to resign. ECF No. 105-26.

Howell resigned after she was notified she had the ability to challenge the investigative findings and Manager Brown's recommendation for termination. ECF Nos. 105-25; 105-26. The fact that Howell resigned instead of exercising her right to appeal the investigative findings and Manager Brown's recommendation shows that she resigned on her own volition.

Howell attempts to dispute the voluntary nature of her resignation by relying on her self-serving testimony that is *contradicted* by her own testimony and text messages. After Howell testified that she sent the June 14, 2023 text messages stating that she was resigning from the County and "leaving by choice," her counsel attempted tried to rehabilitate the problematic testimony asking, "Do you feel as though you actually left the County by choice?" ECF No. 129-31 at 2. Howell responded, "No. I sent that to him because I was trying to seek alternative employment, and I didn't think that it would be a good idea to say I'm leaving because they are going to terminate me." *Id.* at 3. Howell's explanation is illogical because when she sent those

messages, the investigation was not concluded and there was no recommendation to terminate her. Once Howell realized her texts and testimony about her texts were problematic to her constructive discharge claim, Howell tried to rectify the issue by stating that she was dishonest in the messages. *Id*. Either Howell was dishonest when she sent the text messages and during initial deposition testimony, or she was dishonest in her testimony when her own legal counsel tried to rehabilitate her. Regardless, the totality of facts establish that Howell's resignation was voluntary. Howell does not create a factual dispute by relying on her own self-serving statement that is contradicted by her prior testimony and evidence in the record. *See Andreini*, 931 F.2d 896.

No juror could conclude that a reasonable person in Howell's condition would have felt compelled to resign because no decisions concerning her future employment had been made at the time she decided she would be resigning from the County, and instead of resigning Howell could have appealed the investigative findings and Manager Brown's recommendation.

### E.  Howell was not Subjected to an Unlawful Medical Examination

The County is entitled to summary judgment on Howell's second claim for relief because the substance abuse evaluation was a narrowly tailored fitness for duty evaluation which was job-related and consistent with business necessity.

An employer may not require medical examinations or inquire into an employee's disability "*unless such examination or inquiry is shown to be job-related and consistent with business necessity.*" 42 U.S.C. § 12112(d)(4)(A) (emph. added). The objective business necessity test is met when the employer has significant evidence causing a reasonable person to inquire whether an employee can perform her job. *Brownfield v. City of Yakima*, 612 F.3d 1140, 1146 (9th Cir. 2010)*; see also Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 515 (3d Cir. 2001) ("an examination that is 'job related' and 'consistent with business necessity' must be limited to an evaluation of the employee's condition only to the extent necessary under the circumstances to establish the employee's fitness for the work"). The test can be satisfied before the employee's performance declines. *Brownfield*, 612 F.3d at 1146. The employer must show a genuine reason to doubt whether the employee can perform job functions. *Id*. The medical examination must be

a reasonably effective method of achieving the employer's goal. *Sanchez-Valdez v. Arizona*, No. CV 17-01923 PHX CDB, 2019 WL 13252611, at \*9 (D. Ariz. Apr. 23, 2019).

Based on reported observations and concerns that Howell under the influence of drugs or alcohol during a meeting, HR Director Hurley required Howell to participate in a substance abuse evaluation with a licensed drug and alcohol counselor to determining whether she capable of performing her job duties. ECF Nos. 105-5 at 3, ¶6; 105-12 at 2, ¶¶2-3; 117-8 at 3, ¶6. This action is customary when the County receives credible information that an employee may be intoxicated at work. ECF No. 117-8 at 2-3, ¶5. The County hired Janice Fung to conduct a substance abuse evaluation as a component of a fitness for duty evaluation. *Id.* at 3, ¶6. Fung determined Howell did not have a substance abuse disorder. ECF Nos. 105-4 at 21; 105-14 at 4-5. Fung sent HR Director Hurley with a copy of her report on May 30, 2023, in which Howell was not diagnosed with any conditions. ECF No. 105-12 at 4, ¶8; ECF Nos. 105-13 at 13-19, 21-22; 105-14 at 4-5.

Here, the substance abuse evaluation was clearly job-related. It was precipitated by a workplace incident where Howell, HSA Director, showed signs of being under the influence during a public meeting. ECF Nos. 105-5 at 2-3, ¶¶4-5; 105-4 at 9-10, 17; 105-12 at ¶2; 105-9; 105-10. County employees witnessed Howell's behavior and felt compelled to report it. ECF No. 105-5 at 2, ¶4. Fung reviewed the video footage, after which Fung acknowledged that Howell's behavior was inconsistent with an agency director and questioned whether she was "on something." Ex. 2, at 18:20-18:27.[3] As HSA Director, Howell was HSA's representative and advocate, and was expected to serve on committees for HSA issues. ECF No. 105-2 at 3. Howell would not be able to perform those essential functions if attending meetings intoxicated. Based on the significant evidence, a reasonable person in HR Director Hurley's position would inquire whether Howell could perform her job. *See Ellis v. San Francisco State Univ.*, 15-CV-02273-TEH, 2016 WL 4241907, at \*4 (N.D. Cal. Aug. 11, 2016) (recognizing there is no requirement that complaints forming the basis for fitness for duty evaluations be corroborated by a formal

---

[3] Exhibit 2 was also attached to the Opposition to Plaintiff's stricken Second Motion for Partial Summary Judgment.

-17-

investigation, or that a doctor must recommend the evaluation instead of an administrator).

The substance abuse evaluation was also consistent with business necessity because the HSA Director's ability to attend meetings sober is vital to HSA operations, the evaluation genuinely served that business necessity, and it was no broader or more intrusive than necessary. *See Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 97–98 (2d Cir. 2003). Based on the employee reports and the meeting video, the County had an objective legitimate basis to question Howell's ability to perform the duties of HSA Director. *See Ellis,* 2016 WL 4241907 at *4 (stating an employer must first have the requisite evidence that a business necessity warrants a properly tailored fitness for duty evaluation). The substance abuse evaluation was necessary for the County to determine whether Howell was fit for duty. Howell was a high-level County official responsible for managing the operations of a large public welfare agency. ECF No. 105-2; ECF No. 105-3 at 7-8. As the HSA Director, Howell was the face of HSA and the County's primary representative for social welfare issues. *Id.* Howell's essential job duties included developing and administering social service programs; ensuring department compliance with state and federal laws; preparing and administering the department budget; interpreting and explaining laws related to public welfare; communicating effectively with HSA staff, other agencies and County leadership; supervising four Division Directors and overseeing 400 departmental staff; making presentations to the state legislature and other governmental bodies; and ensuring successful departmental and staff performance. ECF No. 105-2 at 2-4. Having a director who can carry out their duties without being intoxicated is vital to the successful operations of HSA. An HSA Director who performs their job while intoxicated could result in reputational harm to the County and agency, subject the County to legal liability, negatively impact relations with government and community partners, negatively impact operations, and negatively impact the vulnerable people that HSA serves. The County took proactive steps to avoid these issues by finding out whether Howell was fit to perform her job duties. The only way the County could adequately assess whether Howell was able to perform her job duties without being under the influence of alcohol or drugs was to have her evaluated by a licensed drug and alcohol counselor.

An employer is permitted to inquiry into an employee's ability to perform job-related functions. 29 C.F.R. § 1630.14(c). That is exactly what the County did here. The County had a reasonable basis to question whether Howell was able to perform essential functions of her job due to reports and video evidence indicating Howell was performing her job while intoxicated. Howell was required to participate in the substance abuse evaluation so the County could evaluate whether she was fit to perform her job duties. ECF Nos. 105-5 at 3, ¶ 6; 105-12 at 2-3, ¶¶ 3-4; 117-8 at 3, ¶ 6. HR Director Hurley told Howell on April 11, 2023, that the purpose of the substance abuse evaluation was to determine if she was fit for duty. ECF no. 105-12 at 3, ¶ 4.

Howell's position that the evaluation did not constitute a fitness for duty evaluation is contradicted by her own admission. Howell surreptitiously recorded an evaluation session where Fung asked what information HR Director Hurley had communicated to Howell about the nature of the evaluation. Ex. 2 at 18:20-18:27 (d]id she tell you this is part of the fitness for duty?"). Howell responded, "Yes." *Id.* Because the evaluation was part of a fitness for duty evaluation, it was not an unlawful medical examination. 29 C.F.R. § 1630.14(c).

Howell cites to Fung's testimony that she was hired to do a substance abuse evaluation and not a fitness for work. ECF No. 129 at 26-27. Fung's testimony does not change the fact that Howell underwent a fitness for duty evaluation within the legal definition. The substance abuse evaluation was a component of the County's overall fitness for duty evaluation. ECF No. 117-8 at 3, ¶6. Howell acknowledged that HR Manager Hurley informed her the substance abuse evaluation was part of her fitness for duty evaluation. Ex. 2 at 18:20-18:27.

The substance abuse evaluation was necessary to obtain the information the County needed for a fitness assessment. ECF No. 117-8 at 2-3, ¶¶4-6. Fung's evaluation was narrowly tailored and conducted for the sole purpose of determining whether Howell was actively using drugs or alcohol on the job and thus whether she could perform her job duties. ECF Nos. 105-12 at 10; 117-8 at 3, ¶6. Fung was not hired to conduct a full psychosocial evaluation or other extensive medical testing, but only to assess the active drug or alcohol issues. *Id*. at 10, 12, 14-15; ECF No. 105-13. Evaluations inquiring into stress-related alcoholism are job-related and

consistent with business necessity. *See Conrad v. Bd. of Johnson Cnty. Comm'rs*, 237 F. Supp. 2d 1204, 1234 (D. Kan. 2002) (recognizing that health professional's comprehensive evaluation on whether plaintiff could perform her job would want to rule out alcohol-related problems).

HR Director Hurley, not Fung, was ultimately responsible for determining whether Howell could perform the job's essential functions. ECF No. 117-8 at 3, ¶ 6. Based upon Fung's finding that Howell did not have a substance abuse disorder, Howell was fit for duty. *Id.* However, Howell did not return to work due to the pending workplace misconduct investigation. *Id*. Because employers are legally authorized to conduct fitness for duty evaluations and the County exercised that authority, Howell cannot establish that the County violated the ADA. 29 C.F.R. § 1630.14(c).

There is nothing in the record to suggest that Thomas or HR Director Hurley had Howell evaluated by Fung to discover whether she suffered from disabilities or the nature or severity of a disability.  There is also no evidence that Thomas or HR Director Hurley harbored either a special bias against individuals with a given disability or a general bias against all persons with disabilities. Because Fung's evaluation was narrow in scope and necessary to establish Howell's fitness for work, the evaluation was job-related and a matter of business necessity. As such, the substance abuse evaluation did not constitute an unlawful medical examination under the ADA.

The substance abuse evaluation did not violate the ADA because it was job-related and consistent with business necessity. 42 U.S.C. § 12112(d)(4)(A). As such, the county is entitled to summary judgment on Howell's second claim for relief.

## IV.  CONCLUSION

Howell cannot establish the elements necessary for a prima facie case of her claims.  There is no genuine dispute as to any material fact on Howell's claims and the County is entitled to judgment as a matter of law. Accordingly, the Court should grant the County's Motion and enter summary judgment in its favor.

Respectfully submitted this 24th day of March, 2026.

By:  /s/ Brandon Price
BRANDON PRICE
Deputy District Attorney
*Attorneys for Defendant Washoe County*

-20-

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5, I certify that I am an employee of the Office of the District Attorney of Washoe County, over the age of 21 years and not a party to nor interested in the within action. I certify that on this date, the foregoing was electronically filed with the United States District Court.  Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

KENDRA J. JEPSEN, ESQUIRE

SILVIA U. VILLANUEVA, ESQUIRE

Dated this 24th day of March, 2026.


                                                            /s/ Elle Thomas
                                                            Elle Thomas

EXHIBIT INDEX

EXHIBIT 1     First Supplemental Disclosures and Subsequent
              Supplemental Disclosures                              18 pages

EXHIBIT 2     Audio Recording of April 21, 2023 Evaluation Session      1 USB

EXHIBIT INDEX